HARRIET S. GRISWOLD, Executrix, *vs.* JAMES W. LAMBERT.

Penobscot.     Opinion February 9, 1897.

*Verdict.     New Trial.     Payment.*

To authorize a law court to set aside a verdict, it must appear that it is so clearly and palpably wrong that no jury of unprejudiced and impartial men could reach such a conclusion except by misapprehension and mistake.

To set aside the verdict of a jury, is to say that the inference drawn by them is indisputably wrong,—that no such inference can fairly be drawn by any fair-minded men,—that the contrary inference is not only the more reasonable inference, but is the only reasonable inference.

In an action upon a promissory note, by the executrix of the payee, the jury returned a verdict for the defendant, who produced testimony of third parties that the note had been paid before maturity to the payee at his office; that the note was then in a safety-deposit vault and the payee promised to obtain it and surrender it to the maker, but died soon after without doing so. Upon the contention that the evidence of payment did not relate to the note in suit, *held;* that in the absence of any evidence showing that the testator held other notes of the defendant, it is a reasonable, if not necessary, conclusion that the money was paid to extinguish the note in suit.

*Also;* that if the note in suit was not in the safety-deposit vault at the time of the payment, or if some other note for the same sum signed by the defendant was there, it must have been in the power of the plaintiff to produce evidence of it.

If the defense of payment was a complete fabrication based entirely upon false testimony, it would hardly fail to appear from the conversation at the office at the time of the alleged payment, that the money was accepted by the testator in payment of the only note which he held against the defendant,— a temporary loan and not an investment,—and in full of all accounts between the parties.

The testator's books were not in evidence; the plaintiff was not offered as a witness; the defendant was debarred from testifying; and in the absence of any evidence that the testator held another note for the same amount against the defendant at that time, *held;* that it would seem to be a reasonable, if

. not a necessary, conclusion that the money was paid to extinguish the note in suit.

ON MOTION BY PLAINTIFF.

The case appears in the opinion.

*C. H. Bartlett*, for plaintiff.

*J. F. Robinson*, for defendant.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

WHITEHOUSE, J.   This was an action on a promissory note signed by the defendant and payable to the plaintiff's testator as follows:

$100.                                        June 9, 1888.

One year from date I promise Wm. H. McCrillis to pay him or order one hundred dollars with interest value received borrowed money.                              · J. W. LAMBERT.

(Six Mile Falls).

This instrument was introduced in evidence by the plaintiff's attorney.

The payee therein named died in May, 1889, a month before the note would have matured; but it was alleged in the defendant's brief statement that "before said note became due, viz: in the fall of the year, in which it was given, the defendant paid to the testator the sum of one hundred dollars which was accepted in full payment of said note and interest," and taking upon himself the burden of proof, as he was compelled to do, the defendant introduced evidence having a tendency to support this allegation of payment.

The jury returned a verdict for the defendant. The plaintiff seasonably filed a motion for a new trial, first, "because the verdict is against the evidence," second, "because there is no evidence connecting any payment with the note declared upon;" and the plaintiff's counsel now asks this court to sustain this motion and thus in effect declare that the verdict is so clearly and palpably wrong that no jury of unprejudiced and impartial men

could reach such a conclusion except by misapprehension and mistake; for "to set aside the verdict of the jury, is to say that the inference drawn by the jury is indisputably wrong,—that no such inference can fairly be drawn by any fair-minded men,—that the contrary inference is not only the more reasonable inference, but is the only reasonable inference." *York* v. *R. R. Co.*, 84 Maine, 117 ; *Pollard* v. *R. R. Co.*, 87 Maine, 61.

As the testator's books were not in evidence and the plaintiff was not offered as a witness, the defendant himself was excluded from testifying to any facts happening before the death of the testator. No receipt or other memorandum signed by the testator was produced by the defendant as evidence of the payment of the note. But it was claimed that the entire sum of one hundred dollars was delivered to the testator on one occasion, in the month of October, 1888, and accepted by him in full payment of the note, in the presence of the two witnesses whom the defendant produced in court.

Charles McDonald, called by the defendant, stated that he resided in Glenburn and worked for the defendant a short time in October, 1888, driving a milk cart; that on the day in question he went to Bangor with the cart and after driving around on one side of the river, went to the steamboat wharf to ask defendant about the milk accounts and defendant said he wanted witness to go up to McCrillis' office ; that the defendant got onto the cart and they went up there. In response to a request by the defendant's attorney to state " all the conversation that took place in the office that morning," the witness further testified as follows :—

" Well, sir, Mr. Lambert took his pocket-book out of his pocket and counted out one hundred dollars and says to McCrillis, " You take and count that and see if it ain't right." Mr. McCrillis took the money and counted it and said :—" It's all right." Mr. Lambert said :—" What about the interest ?" He says :—" You have done a lot of choring round and I ain't going to charge you interest;" . . . . " told him the note was down in Merrill's safe and he could get it for him most any time."

James L. Dolliff, of Hudson, stated that he worked for the

defendant at Six Mile Falls in the fall of 1888; that he came down to Bangor with the defendant to haul some goods for another party; that he saw the milk cart in front of McCrillis' office and went up there to get some money of the defendant to buy a pair of shoes; that he found the defendant and McDonald in the office. In answer to inquiries by counsel the witness continued as follows : —"I heard Mr. Lambert tell McCrillis there's one hundred dollars, and I didn't see or didn't count it, and McCrillis turned round and counted it and said it was all right; he said the interest on the note was all right, that Mr. Lambert had done quite a lot of running around for him and he would charge him nothing for interest." Being asked if there was anything else said, the witness added: "He said the note was down to Merrill's safe; that he couldn't get it that day." Lambert says:—"I am in a hurry, and I will call in some other day and get it."

Daniel Lord, of Bangor, testified that he performed some clerical services for the testator during the last year of his life and that Mr. McCrillis was accustomed to keep his mortgages and notes in Bowler & Merrill's safe, during that period.

The counsel for the plaintiff suggests that it is quite remarkable that the defendant should have paid this note eight months before it was due, and still more extraordinary that he should have done so without insisting upon having either the note itself, or a receipt specifying for what purpose the money was paid. But notwithstanding the shadow of doubt thus thrown upon the credibility of this testimony, the plaintiff's counsel is compelled to admit that it would warrant the jury in finding that, on the occasion in question, the defendant did pay to the testator the sum of one hundred dollars to take up a note : he still insists, however, that it has no tendency to prove that it was paid to take up the particular note in suit.

According to the testimony of both witnesses, Mr. McCrillis stated to the defendant on the occasion of the payment of the one hundred dollars, that the note was in Merrill's safe.

It does not appear that the defendant, or either of these witnesses, had learned from any other source that the note was in Merrill's

safe. But they confidently testified that McCrillis so stated; and if the note in suit was not there, or if some other note for precisely one hundred dollars, signed by the defendant, was there, it must have been in the power of the plaintiff to produce evidence of it.

The memorandum of "Six Mile Falls" placed on the note to indicate the residence of the defendant, is another circumstance not unworthy of mention, as having a tendency to suggest that this was probably the first and the only transaction of the kind between the parties. If the defense had been a complete fabrication based entirely on false testimony, it is scarcely conceivable that it would have failed to appear, from the conversation had in the office at the time the payment is alleged to have been made, that the money was accepted by the testator in payment of the only note which he held against the defendant, and in full settlement of all accounts between the parties.

The defendant was excluded from testifying in relation to all such matters, and in the absence of any evidence that the testator held another note for one hundred dollars against the defendant at that time, it would seem to be a reasonable, if not a necessary, conclusion that the money was paid to extinguish the note in suit.

*Motion overruled.*